PAYSON (LEITER v.).   See Case No. 8,227.
PAYSON (MICHENER v.).   See Case No. 9,524.

---

## Case No. 10,863.

### PAYSON v. STOEVER.

[2 Dill. 427;[1] 2 Ins. Law J. 733; 5 Chi. Leg. News, 477.]

Circuit Court, D. Minnesota.   June Term, 1873.

BANKRUPT ACT — STOCKHOLDER'S LIABILITY — RIGHTS AND POWER OF ASSIGNEE — CONSTRUCTION OF CHARTER OF THE REPUBLIC INSURANCE COMPANY.

1. Under the bankrupt act [14 Stat. 517], the right to enforce the liability of stockholders with respect to their unpaid stock passes to the assignee; and this is the case with the Republic Insurance Company under its charter, whose assignee in bankruptcy may enforce such liability so far as necessary to pay losses and all other debts provable against the company.

2. The bankruptcy court has authority to make an assessment upon the stockholders, and its action in so doing cannot be collaterally assailed in suits to enforce the collection of the assessment.

3. By the charter of the Republic Insurance Company, its capital stock was fixed at $1,000,000, with authority to increase the same to $5,000,000 at the discretion of the stockholders: *Held,* that the charter contemplated that the increase of stock should be made by the stockholders, and that the directors had no authority under the original charter to make the increase.

4. No formal vote of the stockholders to increase the stock was necessary.

5. The requisite assent of the stockholders might be shown by their conduct and acquiescence, and in this case it was thus shown by the facts stated in the opinion of the court.

[Cited in Clarke v. Thomas, 34 Ohio St. 63. Cited in brief in Ward v. Farwell, 97 Ill. 597.]

6. The amended charter authorizing the directors to increase the capital stock—the stock never having been increased beyond the amount authorized in the original charter—did not have the effect to discharge a non-assenting stockholder from his liability upon his unpaid stock.

This action is brought by the plaintiff [Joseph R. Payson], the assignee in bankruptcy of the Republic Insurance Company of the state of Illinois, against J. C. Stoever, to enforce the collection of an assessment of sixty per centum upon the par value of

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

ten shares of stock in said company, of which he is alleged to be the holder and owner. The company was adjudged a bankrupt on a creditor's petition by the district court of the United States for the Northern district of Illinois, November 14, 1872, and the plaintiff was duly appointed assignee in bankruptcy, and a conveyance was made December 18, 1872, to him by the register under the 14th section of the bankrupt act [14 Stat. 522]. The assignee filed in the bankruptcy court a petition for assessment upon the unpaid stock of the stockholders December 30, 1872, and, after due consideration of the same, the court, in February, 1873, ordered, adjudged, and decreed that an assessment be made upon the capital stock and stockholders of sixty per centum of the par value of said stock. [Case No. 11,704.] The company was chartered February 15, 1865, by the legislature of Illinois, with a capital stock of $1,000,000, with authority to increase the same to not exceeding $5,000,000 at the discretion of the stockholders. This charter was subsequently amended (March 25, 1869), providing, among other things, that "the board of directors shall have power to increase the capital stock of said company from time to time in their discretion." The board of directors, January 9, 1868, voted to increase the capital stock of the company, by resolution, to $5,000,000, but at no time during the existence of the company was that amount of stock issued. The defendant held a certificate for ten shares of stock, dated November 8, 1868, reciting the payment thereon of twenty per cent. It is admitted that the shares owned by him were not part of the $1,000,000 first issued, but were part of stock issued in excess of this amount. At an annual and regular meeting of stockholders, January 13, 1869, a report was submitted, showing that $3,746,000 of stock had been issued at that time, and at this meeting $3,116,000 of stock was voted for directors, of which stock so voting $804,600 was represented out of the first $1,000,000 issued. This meeting was the regular annual meeting of the stockholders provided for by the by-laws of the company, which by-laws were adopted January 8, 1868, by the directors, and not by the stockholders of the company. The defendant received two dividends on the 10th of February, 1870, of $10 each, upon the stock owned by him, but never had, as he testified, any knowledge that the capital stock of the company had been increased beyond the $1,000,000, or that the charter had been amended. On all the stock issued the company declared four five per cent. dividends, as follows: June 30, 1868; January 13, 1869; July, 1869, and January, 1870. The whole amount of stock issued by the company before its failure was $4,900,000. At the time of the amendment of the charter, in March, 1869, the company had then issued stock to the amount of $4,459,300. The bankruptcy of the company

was occasioned by the great Chicago fire in October, 1871, in which it had risks and sustained losses to the amount of nearly $3,000,000.

The cause was tried to the court. The defendant's counsel rest the defence upon substantially three grounds: 1. That under the bankrupt act no right to enforce the liability of stockholders in respect to the unpaid stock passes to the assignee, but such liability must be enforced by creditors in their own names, or through a receiver appointed by a court of chancery. 2. The bankruptcy court has no authority to make an assessment, or call upon the stockholders, but if it has, the call in this case is made upon an erroneous basis, since it is made both with respect to liabilities and losses by fire, and with respect to matters for which, under the 6th section of the charter, the stockholders are not liable. 3. That the defendant's stock, for which payment is sought to be enforced, is wholly void, the same being stock which was issued in excess of the $1,000,000 by the directors, without the sanction of the stockholders, as required by the charter, and prior to the amended charter, to which amendment the defendant claims never to have assented.

[See Cases Nos. 11,704 and 11,705.]

Mr. Frost, of Miller, Frost & Lewis, and C. K. Davis, for assignee.

Mr. Gilman, Mr. Lamprey, Mr. Horn, Mr. Warner, and others, for defendant.

Before DILLON, Circuit Judge, and NELSON, District Judge.

DILLON, Circuit Judge. The questions arising in this cause have been presented by counsel with a degree of thoroughness, research, and logical force rarely witnessed, and as an early determination of the cause is desirable, the court proceeds to announce its conclusions without waiting to find time to elaborate at any considerable length the grounds upon which its judgment rests.

1. The plaintiff, as the assignee in bankruptcy of the Republic Insurance Company, represents as against its stockholders the rights both of the bankrupt company and its creditors. The company being in bankruptcy, all the claims of its creditors must be established in the bankruptcy court, and its assets collected and distributed under the superintendence of that court.

Whether under its charter the company, if it had not been thrown into bankruptcy, could collect from the stockholders the full amount of their unpaid stock, or could only collect so much as might be necessary to pay "losses" proper as distinguished from "liabilities," it is not necessary to determine, for clearly the unpaid stock is liable to creditors for all debts and legal liabilities, and the assignee represents the creditors as well as the company. However it might have been before, creditors cannot, since the supervention of bankruptcy, bring bills in equity or other actions in their own names directly against the stockholders to enforce their liability with respect to their unpaid stock.

The liability on the part of the stockholders is one which is imposed for the benefit of creditors, and creditors must now secure the benefit of it through the assignee. And in respect to the assignee and so far as may be necessary to pay the binding debts and legal liabilities of the company, the principles sanctioned by the supreme court of the United States in the case of Ogilvie v. Knox Insurance Co., 22 How. [63 U. S.] 380, 387, apply here. "Stockholders," says Mr. Justice Grier, in that case, "who have not paid in the whole amount of stock subscribed and owned by them, stand in the relation of debtors to the corporation for the several amounts due by each of them. * * * The stock subscribed and owned by the several stockholders or partners constitutes the capital or fund publicly pledged to all who deal with them."

2. The assignee can only collect so much of the unpaid stock as may be necessary to satisfy debts provable in bankruptcy against the company, and the necessary costs and expenses of administration; and it follows that the necessity for the sixty per cent. assessment made by or under the direction of the bankruptcy court is not collaterally inquirable into in every or any action brought to enforce payment of such assessment. Such questions must be decided in that court. If more is assessed and collected than is necessary to pay claims against the estate, any stockholder may apply to that court for his proportion of the surplus. Upton v. Hansbrough [Case No. 16,801].

3. It is our opinion that the original charter of the company contemplated that any increase of the capital stock beyond $1,000,000 should be assented to by the stockholders as distinguished from the directors. It being admitted that the shares of stock owned by the defendant were no part of the $1,000,000 first issued, but were part of the stock issued by it in excess of the $1,000,000, and prior to the amended charter of March 25, 1869, this stock would not be legal, and no action could be maintained to recover the price of it unless the stock has become legal stock by matters subsequently occurring, or unless the defendant, under the facts proved, is estopped to set up this objection.

The legislature authorized a capital of $5,000,000, but required the assent of the stockholders to any increase beyond one million. The amount issued at no time had reached the $5,000,000.

No mode of procuring the assent of the stockholders to the increase of stock is prescribed by the charter. It is conceded that in a meeting of the stockholders of the original million of stock duly convened, a majority might determine upon such increase and bind the minority. On January 9th, 1868, the directors resolved upon an increase of the capital stock to five millions of dollars. On

November 6th, 1868, the defendant subscribed for his stock. On the 13th of January, 1869, there was a regular annual meeting of the stockholders, to which a report was made, showing that $3,746,100 of stock had up to that time been issued, and $3,116,000 of stock was voted at that meeting for directors. The evidence shows that over $800,000, or in round numbers, four-fifths of the first million of stockholders were present, in person or by proxy, and voted at this meeting for directors. No objection then, or ever, was made to the increase of stock, and the old stockholders and the new voted indiscriminately, and the proceeds of all sales of stock were treated and invested by the directors as capital until the company ceased to do business. Two dividends were made in 1869, and one in 1870, upon all the stock, which in each of those years exceeded four millions of dollars.

The defendant, in February, 1870, received two of these dividends. On the 25th of March, 1869, the charter was amended authorizing, inter alia, the directors to increase the stock. After this, as well as before, the directors repeatedly and always recognized the validity of all the stock which had been issued.

The defendant, it may be admitted, had no personal knowledge of any increase of capital stock, or of the passage of the amended charter, until after this suit was brought, although the agent who acted for him in his absence in respect to his stock had such knowledge.

The only ground of defence here is that the stock issued in excess of the $1,000,000 is void, because the holders of this first million of stock did not assent to the increase.

From the proofs in the case, we find that at lease four-fifths of the original million of stockholders did know of and assent as early as January, 1869, to this increase of stock, and are of opinion that the requisite assent of the stockholders can be shown by their conduct and acquiescence, and need not necessarily be established by any formal vote or resolution.

Inasmuch as during part of 1868, and all of 1869, 1870, and 1871, down to the great fire in Chicago, the company did business and declared dividends, on the basis of having nearly $5,000,000 stock out, a fact not disguised or concealed, but proclaimed to the world, the defendant, as a holder of a stock certificate, which he still retains, and receiving dividends, which he also retains, will not be permitted by the principles of law, in order to escape a liability imposed for the benefit of creditors, to deny at this late day that he is a stockholder in the company. Particularly ought this to be so in view of the amendment of the charter by the legislature giving the directors the power to increase the stock, and their subsequent action ratifying what they had previously done.

The original charter contemplating that stock might be issued to the extent of $5,000,000, and that amount never having been quite reached, the amendment of the charter was not of such a radical character as to discharge a nonassenting stockholder from his liability as respects his unpaid stock. This view has been recently taken by the United States circuit court for Indiana in the case of Payson v. Withers [Case No. 10,864].

In the conclusion of Judge Drummond in that case on this point we concur.

Judgment for the plaintiff.