priating the funds of the bank for that purpose. The fact that Valentine was permitted to overdraw his account and appropriate the assets of the bank to his own use brings the case here within the principle of the case of Hanover Nat. Bank of City of New York v. American Dock & Trust Co., 148 N. Y. 612, 43 N. E. 72, 51 Am. St. Rep. 721, where the defendant was held liable upon a warehouse certificate for goods deposited, issued by an officer in his own favor, where no goods had been in fact deposited; it appearing that the officer in the course of the business had issued certificates to himself, to the knowledge of the company's directors, either express or implied.

The complaint should be dismissed upon the merits. Findings may be submitted.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WIL-LIAMS, and HISCOCK, JJ.

Albert H. Harris, for appellant.
George P. Decker, for respondent.

PER CURIAM. Judgment affirmed, with costs, on opinion of NASH, J., delivered at trial term.

---

(36 Misc. Rep. 583.)

HACKETT et al. v. NORTHERN PAC. RY. CO.

(Supreme Court, Special Term, New York County. December, 1901.)

1. RAILROAD CORPORATIONS—PREFERRED STOCK—CONDITIONS.
    Where a railway corporation is authorized to issue preferred stock, on a vote of a majority of its stockholders, without any conditions, the corporation may attach such conditions as it chooses; and they, when agreed to by the holders of such stock, become the contract between it and them.

2. SAME—VALIDITY.
    A condition for the issue of preferred stock by a·railway company that the corporation may retire the same on any 1st day of January prior to 1917 is valid.

3. SAME—RETIREMENT.
    Where the act of incorporation of a railroad company authorized it to issue preferred stock, convertible into common stock at the option of the corporation, it may retire preferred stock at par, and issue common stock instead; giving the holders of the common stock the privilege of acquiring the additional common stock.

4. SAME—RIGHTS OF PREFERRED STOCKHOLDERS.
    Where a railroad company is authorized to retire its preferred stock at par, the holders thereof cannot enjoin such plan on the ground that it will reduce the capital of the corporation, inasmuch as such reduction will accrue after they have ceased to have any interest in the corporation.

5. SAME—EXERCISE OF OPTION.
    Where a railway charter provides for the management of its affairs by its directors, and they are invested with all the powers of the corporation, "except as hereinafter provided," and the charter also authorizes the retirement of the preferred stock, a resolution of the board retiring all the preferred stock at par January 1, 1902, is a valid exercise of this option by the corporation.

6. SAME—EFFECT.
    The exercise of the right to retire the preferred stock does not effect an organic change in the business of the corporation.

**7. SAME—REMEDIES—INJUNCTION.**

> If holders of preferred stock on its retirement by the issue of common stock have a right to exchange it for such stock, and that right is wrongfully denied, and the corporation is solvent, the remedy of the stockholders is an action for damages, and not by injunction.

Action by George E. Hackett and others against the Northern Pacific Railway Company. Motion for injunction pendente lite. Motion denied.

Wm. H. Cochran and Ball & Hildreth, for plaintiffs.

Stetson, Jennings & Russell (Francis Lynde Stetson, of counsel), for defendant.

SCOTT, J. This is an application by holders of preferred stock of the defendant corporation for an injunction pendente lite restraining the consummation of a plan whereby it is proposed to retire the preferred stock of the company at par, and to issue in place thereof common stock to an equal amount, giving to the present holders of the common stock the privilege of acquiring the additional common stock to be issued in substitution for the preferred stock. The defendant corporation, as at present known and constituted, came into being in 1896, as the result of the reorganization of another corporation known as the Northern Pacific Railroad Company. This defendant was incorporated by the legislature of Wisconsin in the year 1870 under the name of the Superior & St. Croix Railroad Company, with an authorized capital stock of $5,000,000, which might be increased to $10,000,000. This act was amended from time to time, until finally, in 1895, by chapter 244 of the Laws of that year, very radical amendments were made, which permitted, and doubtless were intended to permit, the acquisition of the property and franchises belonging to the Northern Pacific Railroad Company, then about to be reorganized. The powers of the corporation were largely increased. With reference to the capital stock it was provided that it might be increased from time to time, by a vote of a majority of the stockholders, to such an amount as might by them be deemed necessary. It was further provided that the company might, by a like vote of its stockholders, classify its stock into common and preferred, and divide its preferred stock into different classes, and make any or all of its preferred stock cumulative or noncumulative as to dividends. It was further provided that said company might "make such preferred stock convertible into common stock, upon such terms and conditions as may be fixed by the board of directors." On July 1, 1896, the name of the corporation was changed to that now borne by it, and on the same day certain resolutions were adopted by the unanimous vote of its then stockholders. One of these resolutions provided for an increase of the capital stock to $155,000,000, to be divided into $80,000,000 of common stock and $75,000,000 of preferred stock. Among the provisions inserted in this resolution was the following:

> "Resolved, that such preferred stock shall be issued upon the condition that, at its option, the company may retire the same, in whole or in part, at par, from time to time, on any first day of January prior to 1917."

The second resolution, adopted on the same day, recited that the property and franchises of the Northern Pacific Railroad Company were about to be sold under foreclosure; that the firm of J. P. Morgan & Co., as reorganization managers of said company, under a certain plan and agreement for reorganization, had acquired large proportionate parts of the several issues of the securities of said company, which they proposed either to use themselves in the purchase of the property and assets of said company, or to turn over to the Northern Pacific Railway Company in exchange for its capital stock and bonds, so that said last-named company might purchase said property and franchises. The directors of this defendant were therefore authorized to enter into an agreement with the reorganization managers for the acquisition of securities of the Northern Pacific Railroad Company, to be used in the purchase of its properties and franchises, issuing in return to said reorganization managers securities in stock and bonds of this defendant. The directors of the defendant on July 13, 1896, made such an agreement as had been then authorized with the reorganization managers, whereby the defendant corporation agreed to issue and deliver to said managers, in exchange for securities of the Northern Pacific Railroad Company, bonds of the defendant and certificates for $75,000,000 of preferred stock and $80,000,000 of common stock. This agreement referred to, and by reference incorporated into itself, the plan or agreement for the reorganization of the Northern Pacific Railroad Company, under and upon the faith of which the holders of the securities of the said company had deposited those securities with the reorganization managers. In this plan or agreement it was expressly stated, referring to whatever company might acquire the properties and franchises of said Northern Pacific Railroad Company, and speaking of the preferred stock to be issued by said purchaser company:

"The right will be reserved by the new company to retire this stock, in whole or in part, at par, from time to time, upon any first day of January during the next twenty years."

The certificates of stock which were issued under the foregoing resolutions and agreement, both for the common and preferred stock, as well as every certificate of stock of either class which has been issued since, have contained the following clause:

"The company shall have the right, at its option, and in such manner as it shall determine, to retire the preferred stock, in whole or in part, at par, from time to time, upon any first day of January prior to 1917."

The defendant corporation was expressly authorized by its charter to issue preferred stock, and no restriction or limitation was put upon it as to the terms and conditions upon which such stock was to be issued, except that the company might, at its option, make it convertible into common stock. The company was therefore left free to attach such conditions and restrictions upon the issue of such stock as it saw fit, and the conditions and restrictions thus attached, when agreed to by the holders of such stock, became a valid and enforceable contract between the company and such holders, whose acquiescence followed upon their acquisition of the stock. Scott v.

Railroad Co. (Md.) 49 Atl. 327. The contract between this defendant and its preferred stockholders is definite and precise. It had its birth at the very moment that the issue of preferred stock was authorized by a vote of the stockholders, and from that moment became a part of every share of preferred stock issued, as a vital condition of its issuance. Its terms have been incorporated into every certificate of stock issued by the company, including those held by the plaintiffs, who thus acquired their stock with full knowledge and notice of the basic condition upon which the stock had been authorized. It was founded upon the equitable consideration that the holders of securities of the predecessor company had surrendered their securities to their agents, the reorganization managers, upon the faith of the statement in the plan or agreement of reorganization that the new company would attach such condition to the preferred stock which they issued to the reorganization managers in exchange for such securities of the predecessor company. I see no reason to doubt that the condition then attached to the preferred stock was one which the company had the right to attach. Preferred stock, in its very nature, is stock which is held under a different contract and subject to different conditions from those under which common stock is held. It is, of course, competent for the legislature to prescribe what these conditions shall be, and to forbid all others. It may, however, leave the determination of that question to the company itself, and it does so leave it when it fails to specify and limit the conditions. The legislature of Wisconsin placed no limitation upon the terms which this company might attach to its issue of preferred stock, and therefore left it to determine those terms for itself. It is claimed, however, that, although it was lawful for the company and the preferred stockholders to agree that the stock might be retired at par, still the company cannot enforce that contract and retire the stock, because to do so would involve a reduction of the capital by an amount equal to the outstanding preferred stock. This contention is founded upon a nice distinction between the meaning of the word "retire" and that of the word "acquire." If the condition upon which the preferred stock was issued had been that the company might, at its option, "acquire" the preferred stock, this particular objection to the proposed action of the defendant would clearly be without any foundation; for it cannot be doubted the company has the legal right to purchase its own stock. It is argued, however, that to "retire" stock necessarily means that it is to be extinguished, and that, if $75,000,000 of preferred stock should be extinguished, the capital of the company would be to that extent reduced. It is not apparent how the plaintiffs are interested in the question whether or not the capital stock of the company is reduced, or, if reduced, whether or not such reduction is lawful. Such reduction, if it takes place at all, will take place after their interest in the company has come to an end by the retirement of their stock. An examination of the resolution adopted by the defendant's directors will show that the capital stock of the company will not in fact be reduced or increased. It will still remain, as originally fixed, at $155,000,000; the sole difference being that all of the capital stock will be common stock. The bur-

den of the plaintiffs' complaint is that they will not be permitted to exchange their preferred stock for common. They do not point out why they are entitled to such an exchange. Certainly no contract to that end was ever made with them. Their agreement was that their stock might, at the company's option, be retired at par. This condition, which now appears to be a burdensome one, was doubtless inserted as an offset to their preferential right to receive dividends, if the net earnings of the company should not provide dividends for both classes of stock. Having assented to this condition, they cannot avoid its enforcement merely because they apprehend that as a result of such enforcement the company may do some unauthorized act, unless they can also show that such unauthorized act will injure them in some way other than by retiring their stock. The company has the right to retire the stock at its option. All that the plaintiffs are entitled to insist upon is: First, that the option shall be exercised in a legal way; and, secondly, that they shall receive par for their stock. With what happens afterwards they have no concern. It is a mistaken view to take of the functions of a court of equity that it will interfere by a writ of injunction to prevent an abstract wrong, or one not affecting any person who invokes its aid. Even if it appeared (which I do not intend to be understood as intimating) that the directors of this defendant contemplated doing something after the plaintiffs' stock had been retired which would be unauthorized by law or beyond the powers of the corporation, still the court would not be called upon to act by way of injunction unless appealed to by some person who would suffer loss or injury from the threatened act, or, in some cases, by the state. It does not appear that these plaintiffs will or can so suffer; for when such unauthorized acts, if they be such, are performed, the plaintiffs' interest in the corporation will have come to an end by the retirement of their stock.

It remains to consider whether the company has lawfully exercised the option to retire the stock. The attempt to do so was by a resolution of the board of directors, whereby it was resolved that the defendant corporation "has determined and hereby does determine to retire the preferred stock of the Northern Pacific Railway Company, in whole, at par, upon the first day of January, 1902." The charter (Laws Wis. 1895, c. 244, § 8) provides that "all of the affairs of said company shall be managed by a board of directors, who shall be stockholders, and who are hereby invested with all the powers of the corporation except as hereinafter provided." It is, of course, true that this authority does not empower the directors to make organic or fundamental changes in the composition or business of the corporation. Railway Co. v. Allerton, 18 Wall. 233, 21 L. Ed. 902. The exercise of the option to retire the preferred shares cannot in any proper sense be considered as effecting such a fundamental change. The retirement of the preferred stock at some time was contemplated by the stockholders, and was provided for when the issue of the stock was authorized. All that was left was the determination as to when the option should be exercised and the retirement take place. This was a matter peculiarly within the scope of the directors' powers, and, even if the assent of the stockholders were necessary,

that assent might be given at any time and in any manner which would serve to show that they approved of the exercise of the option. Payson v. Stoever, 19 Fed. Cas. 27 (No. 10,863). It is asserted by the answer that more than a majority of the stockholders of both classes have signified their acquiescence.

Many other questions have been raised and ably argued in the briefs of counsel. That they are not discussed at length in this opinion is not to be taken as an indication that they have not been examined and considered, but only that their discussion at length does not appear to be necessary. I am satisfied that the plaintiffs, as holders of preferred stock, have not, and never have had, the right to insist that their stock should be transformed into common stock, or that they should be permitted to subscribe for the common stock proposed to be issued in place of the present preferred stock; that, on the other hand, the company has the positive right, at its option, to retire the preferred stock at par, and that the directors of the company are authorized to exercise that option in behalf of the company; that the plaintiffs have no concern with what may be done with the stock of the company after their preferred shares have been retired, or in consequence of such retirement, nor are they in a position to question the manner in which the company proposes to raise the money to retire their shares, so long as they are assured of the par value thereof. Even if the defendant's right to retire the plaintiffs' stock was less clear than I deem it to be, I should still hesitate to permit the temporary injunction to stand. The plaintiffs, though holding preferred stock to a considerable amount, really hold but a small percentage of this class of stock, and, of course, a much smaller percentage of the total capital stock of the company. Their claim is that they are entitled to an opportunity to subscribe for the convertible certificates representing common stock to be issued in place of the preferred stock. Upon what that claim is based is not made very apparent, but, assuming that it is well founded, no reason is suggested why they cannot be fully and amply compensated in an action for damages for the denial of their assumed right. The amount of common stock to which they would be entitled, and its value, would be readily ascertainable, and no suggestion is made that the defendant is not solvent and well able to respond in damages. I see nothing in the case to warrant a departure from the rule that an injunction will not issue to prevent a threatened invasion of a plaintiff's rights where his remedy by an action for damages is available and adequate, and the damages, if any, are easily ascertainable. It follows that the motion to continue the temporary injunction must be denied, and the said temporary injunction vacated, with $10 costs.

Motion denied, and temporary injunction vacated, with $10 costs.