WEIDENFELD v. NORTHERN PAC. RY. CO.

(Circuit Court of Appeals, Eighth Circuit. March 14, 1904.)

No. 1,942.

1. CORPORATIONS—RAILROADS—PREFERRED STOCK—RETIREMENT—CONVERSION.

Laws Wis. 1895, c. 244, p. 475, chartered the Northern Pacific Railway Company, and authorized it to classify its stock into common and preferred, and to make such preferred stock convertible into common, on such terms and conditions as might be fixed by the board of directors. The act also authorized the company to borrow from time to time such sums of money and on such terms as the corporation or its board of directors should agree, and in its corporate name to execute evidences of indebtedness, and make the same convertible into its capital stock of any class upon such terms and conditions as its board of directors deemed advisable. *Held,* that the corporation, under such provisions of its charter, had authority to issue certificates of indebtedness with which to retire the preferred stock, and to immediately convert such certificates into common stock.

2. SAME—RATIFICATION.

The certificates of indebtedness having been issued under express statutory authority conferred by Laws Wis. 1895, p. 475, c. 244, § 11, the conversion, even if not originally authorized, was subsequently confirmed by Laws Wis. 1897, p. 632, c. 294, and Laws Wis. 1899, p. 296, c. 193, authorizing the consolidation of railroad companies, validating agreements on which their stocks had been issued, together with their plans of reorganization, etc.

3. SAME—REDUCTION AND INCREASE OF STOCK.

Where a corporation issued certificates of indebtedness with which to retire its preferred stock, and immediately thereafter converted such certificates into common stock, such transaction should be considered as a whole, and hence the issuance of the certificates and retirement of the preferred stock did not operate as a reduction of capital, nor the issuance of such additional common stock as an increase thereof.

4. SAME—RIGHTS OF STOCKHOLDERS.

Where a corporation issued certificates of indebtedness with which to retire its preferred stock, for which the holders of the common stock were entitled to subscribe, a common stockholder could not object that the transaction was invalid on the ground that the preferred stockholders were not entitled to share therein.

5. SAME—PREFERRED STOCK—STOCKHOLDERS' RIGHTS.

Where, at the time of the reorganization of a railroad company, preferred stock was issued under a resolution of the stockholders on the express condition that the company, at its option, might retire the same at its election on certain dates, and each certificate contained a recital of such condition, each preferred stockholder acquired his stock subject to the terms of an express contract which denied him the right to share in new stock issued as a part of a scheme for the retirement of such preferred stock, and that when his stock was so retired he thereupon became a stranger to the company.

6. SAME—ACTIONS AGAINST CORPORATION—PARTIES.

Where a stockholder of a corporation brought suit to restrain it from carrying out a scheme to retire its preferred stock and to issue common stock in its place, but the thing primarily complained of was the ownership of a majority of the corporation's stock by a securities company formed for that purpose, the end sought being the destruction of the securities company's title to its stock and its status as a stockholder, the securities company is an indispensable party defendant, and is not represented in the suit by the corporation.

Appeal from the Circuit Court of the United States for the District of Minnesota.

This is an appeal from a decree dismissing the appellant's intervening petition. The suit was originally instituted by one Peter Power in the district court of Hennepin county, Minn. By his verified bill of complaint, which was filed December 30, 1901, Power alleged that he was then, and had been for more than six months, the owner and holder of 100 shares of the common stock of the defendant, the Northern Pacific Railway Company. He complained that the company, without authority of law, was about to retire all of its preferred stock, amounting to $75,000,000; also that the board of directors and other officers of the company had entered into an illegal combination and conspiracy with similar officers of the Great Northern Railway Company and of the Chicago, Burlington & Quincy Railway Company for the purpose and with the object in view of merging and consolidating the railway systems of the three companies, which were alleged to be parallel and competing, under one management, in violation of the laws and public policy of the United States, the state of Minnesota, and the other states traversed by said railroad systems, and that to accomplish such merger and consolidation they had caused to be incorporated under the laws of the state of New Jersey a corporation known as the Northern Securities Company, with authority to purchase and hold the stocks, bonds, and securities of other corporations, the intention being to cause a majority of the stock of all three companies mentioned to be transferred to the securities company, and to be controlled by it, thereby securing the conduct of the entire business of the three systems by one corporation, and the illegal suppression of competition. It was also alleged by Power that the movement to retire the preferred stock of the Northern Pacific was for the sole purpose of enabling those stockholders and officers who favored the merger to accomplish their unlawful purpose. The relief sought by Power was the prevention by injunction of the retirement of the stock and of the consummation of the merger. The cause was removed by the defendant company to the Circuit Court of the United States for the District of Minnesota, the complainant, Power, being a citizen of the state of New York and the defendant a citizen of the state of Wisconsin. The proofs taken by the defendant showed conclusively that Power never owned any stock in the Northern Pacific Railway Company, and had no interest whatever in any of the matters alleged in his complaint. When the cause was ready for hearing in September, 1902, and long after the retirement of the preferred stock of the Northern Pacific and its conversion into common stock of that company, the appellant, Camille Weidenfeld, by leave of court filed his intervening petition, the averments of which, though much more specific and in detail, are substantially along the lines of the original bill. The principal difference relates to the acquisition of the stock of the Chicago, Burlington & Quincy Company by the other companies—a difference which is not material to a determination of the controlling issues in the case. Weidenfeld alleged that since December 26, 1901, he was the owner and holder of 100 shares of the common stock of the defendant of the par value of $100 each. The prayer of his intervening petition was that all of the steps and proceedings taken by the defendant, its officers, directors, and stockholders, looking to the organization of the securities company and the transfer to it of the controlling interest in the stock of the defendant, be adjudged fraudulent and void; that the defendant be adjudged to have combined and consolidated its stock, property, and franchises with the stock, property, and franchises of the Great Northern Company, a parallel and competing line of railway, contrary to the laws of the state of Minnesota; that the organization of the securities company by the defendant and those associated with it be held and adjudged to be a conspiracy in violation of the law and policy of the state of Minnesota, and that all transfers of stock in the defendant company to it be adjudged to have been in furtherance of the conspiracy and void; and generally that a continuance of such conspiracy and combination by the company, whether by its directors, officers, and agents, or by its constituent members or stockholders, be enjoined; and for general relief.

The facts relating to the merger are substantially those which were recited and passed upon by the court below in United States v. Northern Securities

Co. (C. C.) 120 Fed. 721, and a full narrative of them is unnecessary here. The above outline of the averments in the pleadings and of the prayers for relief is sufficient for the purpose of this appeal. A reference more in detail, however, should be made to that feature of the case relating to the retirement of the preferred stock. The defendant, Northern Pacific Railway Company, derives its corporate existence from certain laws of the state of Wisconsin. Originally incorporated as the Superior & St. Croix Railroad Company, its name was changed on the 1st day of July, 1896, about the time of its acquisition of the properties of the Northern Pacific Railroad Company which were then in the hands of a reorganization committee. To enable the defendant to effect such acquisition, its capital stock, which was theretofore $5,000,000, was increased to $155,000,000, divided into $75,000,000 of preferred stock and $80,000,000 of common. This increase of the capital stock and its classification into preferred and common were duly authorized by law and by the unanimous vote of the stockholders. The resolution of the stockholders recited as an express condition to the issue of the preferred stock that the company might, at its option, retire the same in whole or in part, at par, from time to time, upon the 1st day of any January prior to 1917. Accordingly each certificate of preferred stock, the form of which was prescribed by the board of directors and thereupon approved by the stockholders, contained the condition that "the company shall have the right, at its option, and in such manner as it shall determine, to retire the preferred stock in whole or in part, at par, from time to time upon any 1st day of January prior to 1917." The same recital appears in every certificate of common stock issued by the company. The preferred stock possessed a preferential 4 per cent. noncumulative dividend feature, with provision for the ratable division of the remainder of the surplus net earnings in any fiscal year among all of the stock of both classes, after an equal payment upon the common. It was provided by chapter 244, p. 475, of the Laws of 1895 of the state of Wisconsin, which is one of the various acts conferring upon the defendant company its corporate existence and its powers, that it should possess authority to classify its stock into common and preferred, and to "make such preferred stock convertible into common stock upon such terms and conditions as may be fixed by the board of directors." By the act mentioned the company was also "authorized to borrow from time to time such sums of money and upon such terms as the corporation or board of directors shall agree upon or authorize as necessary and expedient; and in its corporate name execute and deliver its notes, bonds, debentures or other evidences of indebtedness in such form as shall be from time to time prescribed by the board of directors and in such amount as shall be deemed from time to time by said board expedient; and may make the same convertible into its capital stock of any class upon such terms and conditions as to the board of directors may seem advisable." And general power was conferred upon the board of directors to use such evidences of indebtedness in any manner which, in their judgment, would subserve and promote the corporate purposes. By another section of the act it was provided, with certain exceptions not material here, that "all of the affairs of said company shall be managed by a board of directors, who shall be stockholders, and are hereby vested with all the powers of the corporation." On November 13, 1901, the board of directors of the company adopted a resolution by which it was determined to retire the entire issue of preferred stock at par upon the 1st day of January, 1902, the funds for such purpose to be obtained by the issue and sale of certificates of indebtedness or bonds which were convertible at their face into common stock at par. The plan pursued was in strict conformity with the terms of the resolution. The holders of the preferred stock were duly notified that their stock would be retired on January 1, 1902. Certificates of indebtedness aggregating $75,000,000, dated November 15, 1901, maturing January 1, 1907, and bearing interest at 4 per cent. after January 1, 1902, were issued. They were at once offered to the common stockholders at par, each stockholder being given the right to subscribe for and purchase the same to the amount of $75/80$ of the amount of common stock owned by him. On November 15, 1901, a contract was entered into with the Standard Trust Company of New York, whereby the latter agreed to purchase such of the certificates as were not taken by the common stockholders. The certificates, according to their terms, were, at the option of the company, convertible into common stock at par at any time

after their date, and likewise so convertible upon demand of the certificate holder at any time after January 1, 1902. Immediately after the certificates were issued, the company, acting through its board of directors, exercised its option to require their conversion into common stock. The result was that on January 2, 1902, all of the preferred stock of the company had been retired, all of the certificates of indebtedness had served their temporary purpose and had been retired, and the place of the preferred stock in the capitalization of the company had been taken by an equal amount of the common stock, the aggregate capitalization of $155,000,000 being preserved and maintained.

The intervention of the appellant was heard upon the proofs taken in the main branch of the case. The Circuit Court, upon final hearing, dismissed Power's original bill of complaint and appellant's intervening petition. Power did not appeal.

M. H. Boutelle and A. W. Bulkley (Bulkley, Gray & Moore, on the brief), for appellant.

C. W. Bunn and F. B. Kellogg (C. A. Severance, on the brief), for appellee.

Before SANBORN, VAN DEVANTER, and HOOK, Circuit Judges.

HOOK, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The appellant's objections to the conversion of the preferred stock of the Northern Pacific into common stock are: (1) That the retirement of the preferred stock constituted a decrease of the corporate capitalization without authority of law; (2) that the issue of the convertible certificates of indebtedness was not for the acquisition or construction of additional lines of railroad or other properties, and was therefore unauthorized and void; (3) that after the decrease of the capitalization by the retirement of the preferred the issue of an equal amount of common stock was an unauthorized increase in the capitalization. Appellant also contends that the reservation by the company of the option to retire the preferred stock, and the insertion in all of the certificates of stock of both characters of a recital of such reservation, were without authority of law; also that the scheme of retirement and conversion was void for the reason that the privilege was not accorded the preferred stockholders of subscribing to the new issue of common stock. The answer to these various contentions may be briefly stated. In the reorganization of the Northern Pacific Railroad Company and the acquisition of its properties by the defendant in 1896 the bonded indebtedness of the former was converted into the preferred stock of the latter, and in consideration of that fact the reorganization committee and the holders of the securities and the stock of the two companies expressly contracted that the defendant should have the right to retire such stock on the 1st day of any January prior to 1917. To avoid error on the part of any one subsequently dealing in the stock of the defendant, every certificate that was ever issued by it bore upon its face an evidence of such agreement. The preferred stock was intended to be of a temporary character, and to retain in some measure the quality of the original indebtedness, which it succeeded. We do not doubt that the defendant possessed adequate authority to so condition it under the broad and comprehensive powers conferred by its charter, but,

even if what it did in that respect was not originally authorized, confirmation may be found in the subsequent legislation of Wisconsin. Chapter 294, p. 632, Laws 1897; chapter 193, p. 296, Laws 1899. The certificates of indebtedness which were designed to provide a fund with which to retire the preferred stock were issued pursuant to express statutory authority, the limitation being that of a lawful corporate purpose; and these in turn were with like authority convertible into the common stock of the company. Section 11, c. 244, p. 483, Laws 1895.

Counsel in their criticisms have adopted too narrow a view of what was done under the resolution of November 13, 1901. The capital stock of the company was not reduced, nor was it increased. The various steps which were adopted should not be regarded as isolated acts. The issue of the convertible certificates and their sale, the retirement of the preferred stock with the proceeds, the retirement in turn of the certificates themselves, and the issue of an equal amount of common stock of the company constituted in a larger sense but steps to one ultimate act, and that act was the conversion of the preferred stock into the common stock of the company. Every conversion of a security of one class into a security of another necessarily implies a retirement of the former, although every retirement does not necessarily signify a conversion. The issue of the convertible certificates was but a temporary expedient in the process of conversion. Having served their temporary purpose, they passed out of existence, and no longer remained as obligations of the company. As the company was clothed with the express power to convert its preferred stock into stock of another character, and the conversion as effected had due regard to the rights of all parties, an extended consideration of some intermediate but nonessential step becomes profitless. It is true that the preferred stockholders were not accorded the privilege of subscribing to the new issue of common stock; but certainly that fact is not a proper subject for complaint on the part of appellant. His holdings were confined to 100 shares of common stock. He is not the protector or conservator of the personal rights of the preferred stockholders. The claim that their rights were denied may well be left to them to be asserted. As a common stockholder, the appellant was accorded every consideration which he could lawfully claim. He was entitled to subscribe for the new common stock to an amount proportionate to his holdings of the former issue—the same right that was given to every common stockholder. He was not required to exercise such right if he did not so desire, and, if he thought the amount allotted to him for subscription was excessive, he was entitled to reduce it to an amount measured by his sense of the equities of the situation. One may not invoke the aid of the courts in respect of matters in which he has neither a personal nor a representative interest. Smith v. Gale, 144 U. S. 509, 12 Sup. Ct. 674, 36 L. Ed. 521. Moreover, it may well be said that each preferred stockholder acquired his stock subject to the terms of an express contract which denied him the right to share in the new stock assigned for subscription, and that, when his stock was retired, he thereupon became a stranger to the company, without voice

or right of participation in its intracorporate acts and relations. It is also contended by appellant that the retirement of the preferred stock was intended to further the accomplishment of an unlawful merger in the name of the securities company; that without the elimination of the preferred stock the holders of a majority of all the stock of the Northern Pacific, preferred and common, were opposed to the merger; and that, therefore, the taint of the ultimate purpose affected the legality of the retirement. Waiving the question which at once suggests itself—whether it is permitted to inquire into the motives which prompt the doing of that which in itself is expressly authorized by law—we find nothing in the record which supports the premises from which the conclusion is drawn. The evidence conclusively shows that the purpose to retire the preferred stock at the earliest practicable opportunity had its birth when the stock was first issued in 1896. That opportunity arose when the market value of the common stock reached par. Were the preferred stock wholly replaced in the capitalization of the company by an equal amount of common stock, the great advantage to the holders of the original issue of common stock, to whom the option of retirement belonged, is at once apparent. The provision for a preferential dividend on nearly one-half of the total issue of stock would no longer exist, and the surplus net earnings in each fiscal year would then be ratably divided among all of the stockholders of the company. All of the testimony appearing in the record is to the effect that the conversion of the stock was planned and executed upon its own merits, and had no bearing upon the transaction with the securities company. It also appears that before the conversion was consummated the contending elements among the stockholders who were struggling for the control of the company adjusted their differences, and that subsequently practically all of the stock of the defendant was sold to the securities company, or exchanged for stock of that company. If we may, without direct evidence, assume with counsel that this harmony was due in part to a recognition of the power of the holders of a majority of the common stock to force the retirement of the preferred, nevertheless the fact so assumed is entirely too remote for consideration in connection with the contention of the appellant.

The remaining contention of appellant, necessary to be considered, is that the Circuit Court erred in holding that the securities company was an indispensable party to the suit, and that in its absence the intervening petition could not be maintained. The theory of the appellant is that, as an individual stockholder, he can maintain a suit against his corporation as sole defendant to prevent it from commencing or continuing the doing of those things which are beyond its corporate powers, are in violation of law, and which may lead to a forfeiture of its corporate franchises; that, in respect of the charges made in his intervening petition and the relief sought thereby, the defendant company may stand as the sole representative in the suit of all of the stockholders, including the securities company, and that, therefore, the presence of the latter may be dispensed with. But appellant ignores the force of the

pressing and insistent fact that the very thing of which he complains is primarily the ownership by the securities company of a majority of the stock of the defendant, and the end which he is seeking is the destruction of its title and its status as a stockholder. It is of the foundation of our jurisprudence that the rights of a person shall not be directly affected by a judicial proceeding to which he is not a party, and in which he cannot be heard for their defense and protection. Out of this principle has grown the rule, always recognized and enforced, that a suit will not be entertained in the absence of a person who has an interest in the controversy of such a nature that a final decree cannot be rendered without either affecting that interest or leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience. Minnesota v. Northern Securities Company, 184 U. S. 199, 235, 22 Sup. Ct. 308, 46 L. Ed. 499; New Orleans Waterworks v. New Orleans, 164 U. S. 471, 17 Sup. Ct. 161, 41 L. Ed. 518; California v. Southern Pacific Company, 157 U. S. 229, 15 Sup. Ct. 591, 39 L. Ed. 683; Christian v. Railroad, 133 U. S. 233, 10 Sup. Ct. 260, 33 L. Ed. 589; Ribon v. Railroad Companies, 16 Wall. 446, 21 L. Ed. 367; Shields v. Barrow, 17 How. 130, 15 L. Ed. 158; Taylor v. Southern Pacific Company (C. C.) 122 Fed. 147; Hollifield v. Railroad Company, 99 Ga. 365, 27 S. E. 715; Joslyn v. St. Paul Distilling Company, 44 Minn. 184, 46 N. W. 337. Taylor v. Southern Pacific Company, Hollifield v. Railroad Company, supra, and the case at bar, are identical in important and controlling features. In each case the complainant was a minority stockholder of the defendant corporation, and in each case the complainant undertook to lay the ax at the root of the title of an absent stockholder. In the two cases cited it was held that the presence of a stockholder whose rights were attacked was indispensable to the accomplishment of the complainant's purpose.

It is true that, generally speaking, a corporation is the proper representative of all of its stockholders in a suit in which the relief sought will affect each and all of them in the same way and to the same degree. In one sense all of the stockholders are the corporation, and the corporate body, as a legal entity, may be intrusted with the defense of those rights which are common to all. Obviously, the very foundation of this rule is a community of interest, with respect to the object of the suit, between the corporation and all of its stockholders. But where the gravamen of the complaint consists of a vital conflict of interest between the corporation and one or more of its stockholders, or between different stockholders or classes of stockholders, the reason for the rule concerning the representative character of the corporation ceases. The underlying theory of appellant's case is that the corporate powers of the Northern Pacific which he is seeking to protect and the claims of the securities company are conflicting to such a degree that the continued assertion and recognition of the latter will destroy the existence of the former. In other words, he says that, if the securities company is permitted to dominate and control the Northern Pacific in connection with a similar relation to the Great North-

ern, the independence of the Northern Pacific will cease, its capacity to perform its duties to the public will be destroyed, and ultimately its corporate franchises may be annulled. A greater conflict between opposing interests can scarcely be imagined, and in view of such a conflict it cannot reasonably be said that in the suit before us the Northern Pacific may stand as the accredited representative of the securities company.

We may agree with counsel that there are involved in this suit questions concerning the corporate functions of the Northern Pacific, and also conditions which threaten its corporate integrity. But all of this would merely show that the Northern Pacific was an indispensable party to the controversy. It would not tend to show that some other corporation did not also possess such an interest in some other phase of the controversy as made its presence equally indispensable. The power of another to hold and own stock of the Northern Pacific and to exercise the rights of a stockholder are not corporate functions of that company. But the question whether the securities company may lawfully continue to own the stock of the Northern Pacific which it held when the appellant intervened, and may lawfully continue to exercise the rights incident to such ownership, is one affecting the corporate powers of the securities company. It is a question in which that company has an immediate and vital interest. The force of these observations is apparent when it is remembered that appellant is seeking a decree that the transfer to the securities company of a controlling interest in the stock of the Northern Pacific be adjudged fraudulent, illegal, and void, and that the organization of the securities company be held to be an illegal conspiracy, and, in substance, that the Northern Pacific and its officers be enjoined from according to the securities company the rights and privileges of a stockholder. We are of the opinion that the securities company was an indispensable party to the controversy, and that the Circuit Court correctly held that the suit could not be maintained in its absence. These conclusions make it unnecessary to consider the other matters presented in the briefs of counsel.

The decree of the Circuit Court will be affirmed.