99  365
99  370
99  365
101 828

</div>

## HOLLIFIELD *v.* WRIGHTSVILLE & TENNILLE RAILROAD COMPANY *et al.*

1. While an action may be brought in a State court against the receiver of a corporation appointed by a Federal court without previously obtaining leave of the latter court when such action arises in respect of any act or transaction of the receiver in carrying on the usual and ordinary business of the corporation in connection with the property in his charge under the order of appointment, such receiver cannot, without such leave, be sued in a State court in an action the purpose of which is to take from his hands or control property belonging to the corporation or held by it under a claim of ownership at the time the receiver took possession. The question of the receiver's right or authority to hold or manage such property, or any part thereof, cannot be thus raised.

2. An equitable petition filed by a stockholder of a railroad company to restrain it from allowing certain of its capital stock alleged to have been issued to, and to be held by and in the name of another railroad company in violation of law, to be voted by the latter company, or by any person holding such stock for it, cannot be maintained when neither that company nor its duly appointed receiver is made a party defendant.

March 6, 1896. Argued at the last term.

Equitable petition.  Before Judge Gamble.  Washington superior court.  March term, 1895.

*Leonard Phinizy, J. R. Lamar* and *T. W. Hardwick,* for plaintiffs.  *A. F. Daley, Lawton & Cunningham* and *H. W. Johnson,* for defendants.

ATKINSON, Justice.

The Wrightsville & Tennille Railroad Company and the Central Railroad & Banking Company were both incorporated under the laws of Georgia.  Under a bill filed in

the Circuit Court of the United States for the Eastern Division of the Southern District of Georgia, the properties of the latter company were placed in the hands of receivers.   The plaintiff in the present case, a stockholder in the Wrightsville & Tennille Railroad Company, filed an equitable petition in the superior court of Washington county, in this State, in which he alleged, in substance, that in July, 1884, the Wrightsville & Tennille Railroad Company increased its capital stock from $40,000.00 to $70,000.00, and issued 1,400 shares of preferred stock at the par value of $25.00 per share; that such issue was entitled to a payment of six per cent. dividend, and to "voting power" at corporate meetings; that said preferred stock was purchased in 1884 by the Central Railroad & Banking Company; that thereafter the Wrightsville & Tennille Railroad Company consolidated with the Dublin & Wrightsville Railroad Company, and a like issue of preferred stock was made, which was likewise purchased by the Central Railroad & Banking Company; that by virtue of its purchase of such stock, the Central Railroad & Banking Company claims to own a majority of the stock of the Wrightsville & Tennille Railroad Company; that since the time of its purchase of this stock, the Central Railroad & Banking Company has elected the president and directors of the said Wrightsville & Tennille Railroad Company, and by virtue thereof has controlled and managed the affairs of that company; that in February, 1893, the Augusta Southern Railroad Company leased the road from Sandersville to Tennille; that the said Central Railroad & Banking Company has caused the Wrightsville & Tennille Railroad Company to discriminate in various ways against the Augusta Southern Railroad Company, to the injury and loss of the stockholders of the Wrightsville & Tennille Railroad Company; that the issue of said preferred stock was illegal and *ultra vires;* that the ownership thereof in the Central is contrary to law, and that H. M.

Comer and R. S. Hayes, receivers of the Central Railroad & Banking Company, are controlling said stock, and causing said Wrightsville & Tennille Railroad Company to discriminate against said Augusta Southern Railroad Company. Petitioner prays: (1) That the Wrightsville & Tennille Railroad Company be restrained and enjoined from receiving, at any future election to be held, any vote of the stock so illegally issued to the Central Railroad, and be restrained and enjoined from allowing said stock to be voted by the Central Railroad or by any of its assigns, or any person holding it or voting it for the Central Railroad. (2) That the said Wrightsville & Tennille Railroad, its officers and agents, be restrained from discriminating against the Augusta Southern Railroad in the receipt or delivery of freight, and that it be perpetually enjoined from all acts which interfere with the usual and proper freight and passenger business between the said W. & T. and the said A. S. R. R.; that it be required to receive freight from it upon the same terms as the same is received from other roads, and that equal facilities be granted it, and the same promptness of delivery and shipment be accorded freight shipped to or from the A. S. R. R. (3) That said issue of preferred stock be declared invalid. (4) That the Central Railroad & Banking Company be enjoined from voting or selling the same.

The Central Railroad & Banking Company of Georgia was not made a party defendant. The receiver, H. M. Comer, appeared and demurred to this petition, upon the following among other grounds: Because nothing in said petition has any relation to any act or transaction of his in carrying on the business connected with the said Central Railroad & Banking Company of Georgia, of which he is receiver. Because no action can be brought against him as receiver of the Central Railroad & Banking Company of Georgia relating to the property of said Company, without the previous leave of the Circuit Court of the United

States for the Eastern Division of the Southern District of Georgia, by which court he was appointed receiver of the said Central Railroad & Banking Company of Georgia, and no such leave has been obtained by said plaintiff. This demurrer was sustained, and the petition dismissed, and to the ruling dismissing it the plaintiff excepted.

1. Prior to the passage of the act of Congress of 1887, as corrected by the act of August 13th, 1888, there was no law of force in this State for the institution of a suit of any character against a receiver in his official capacity, except upon leave first had and obtained of and from the court wherein he was appointed. By the third section of that act, it is provided, "That every receiver or manager of any property appointed by any court of the United States may be sued in respect of any act or transaction of his in carrying on the business connected with such property, without the previous leave of the court in which such receiver or manager was appointed; but such suit shall be subject to the general equity jurisdiction of the court in which such receiver or manager was appointed, so far as the same shall be necessary to the ends of justice." It does not appear from the petition filed in the present case that leave was obtained to institute in the superior court this proceeding against the receiver appointed by the federal court, and the question of jurisdiction in the former depends upon whether this case falls within the exception established by the statute above quoted, to the general rule existing at the time of its passage. The exception may be stated as follows: Wherever it is desired to bring an action against a receiver in respect to any act or transaction of his in carrying on the business connected with such property, previous leave to sue is not required. The question is, whether the relief sought in the present case is in respect to any act or transaction of the receiver, in his official character, in the conduct of the business committed to his care? We think to ask this ques-

tion is practically to answer it.   The complaint is of the
illegal conduct of the officers of the Central Railroad &
Banking Company and the Wrightsville & Tennille Rail-
road Company prior to the appointment of the receiver.
The object of the petition is not to call in question any act
of the receiver.   Its object is to emasculate the stock of the
Wrightsville & Tennille Railroad Company held by him,
in so far as concerns its right to be voted at, and repre-
sented in, corporate meetings.   Its attack is upon the title
of the receiver derived through the Central Railroad &
Banking Company, and not upon any official act of his.
It calls in question the power of the receiver to vote this
stock in the corporate meetings of the Wrightsville & Ten-
nille Railroad Company; and if the prayer of the petition
were granted, the practical effect of it would be to deprive
the federal court of a property, the possession of which it
has seized in the due course of a judicial administration of
the assets of an insolvent corporation.   Such a proceeding
does not fall within the exception provided by the federal
statute above quoted, but the remedy of the complaining
stockholder, if he conceive that he has a right, is to apply
to the federal court for permission to sue, either in that
court, or in some other court having jurisdiction of the
receiver, and this being granted, the merits of his demand
may be considered.

2.   We also, for another reason, think that this cause
could not properly proceed, viz., the want of another and
necessary party.   One of the objects of this petition is
to practically divest the title of the Central Railroad &
Banking Company to the stock, which is the subject-mat-
ter of this litigation.   The temporary possession of the
receiver, acquired by delivery to him of this stock by the
Central Railroad & Banking Company, cannot be dis-
turbed without making him a party; and therefore, for the
purposes of defending his possession and his right to exer-
cise all of the privileges incident to the possession and *sub*

*modo* ownership of this property, he was entitled to be heard. Where the judicial proceeding, as in the present case, undertakes to lay the axe at the root of the title under which the Central Railroad & Banking Company claims this property, and to strip it of its assets, it occurs to us that it too is entitled to be heard upon the validity of its corporate act before that corporate act can be adjudged to be, as to it, *ultra vires*. A body corporate is not extinguished by the mere appointment of a receiver. As a legal entity it still survives, and if its title to any property held by the receiver be called in question, under a proceeding so instituted as that its title may be by decree of the court divested, the corporation, it occurs to us, is a necessary party to the determination of that question. If only the right of possession of the receiver and his right to vote the stock at meetings be called in question, and the title of the corporation under which he holds be only incidentally involved, the receiver stands for and represents the corporation. If both the title and the right of the receiver be called in question, then both the corporation and the receiver are necessary parties, and unless leave be first obtained to sue elsewhere, the action must be brought in the court appointing the receiver.

These considerations lead us to the conclusion that the court committed no error in sustaining the demurrer and dismissing the petition.        *Judgment affirmed.*