LAMAR *et al. v.* WALTON, ordinary, for use, etc.

*Simmons, C. J.*—1. Where a trustee, after giving a bond for the faithful performance of his duties as such, executed a second bond for the same purpose payable to the ordinary, the latter bond reciting that on account of a change in the corpus of the trust estate from realty to personalty, the principal desired "to strengthen the bond heretofore filed, and give this additional bond," the new bond, both as to the principal and the sureties thereon, rested upon a sufficient consideration; and though a voluntary and not a statutory bond, it was competent for the ordinary, as the payee thereof, to bring his action upon the same for the benefit of any person within its provisions who was injured by a breach of it.

2. That a beneficiary of the trust had before the execution of the new bond instituted proceedings for the removal of the trustee, of which he had privately acknowledged service, and that these proceedings had been kept from the public files of the court, in order to allow the trustee an opportunity to give additional security or to make a settlement, did not amount to such a fraud upon a surety, who signed in ignorance of such proceedings, as would relieve him from liability; it not appearing that any beneficiary of the trust had ever made to him any misrepresentation for the purpose of misleading him as to the truth of the matter or had ever said or done anything for the purpose of inducing him to sign the bond.

3. Where such a bond did not expressly or by fair implication stipulate for liability as to past waste or misconduct on the part of the trustee, it would be binding upon a surety only as to a *devastavit* or breach of duty committed by the trustee after its execution.

4. The bond upon which the present action was brought reciting that the real estate belonging to the trust estate had been sold and the net proceeds invested under an order of court, "and is now held by the trustee to the same uses and trusts as was heretofore said real estate," and the declaration alleging a failure and refusal of the principal and sureties to pay over or account for the trust estate upon lawful demand, a cause of action was set forth, and, in the absence of the additional allegations mentioned in the next note, a surety upon the bond would be estopped from denying the above stated recitals therein and from showing by parol evidence that they were untrue.

5. Inasmuch, however, as the declaration does contain certain allegations which, taken in connection with exhibits thereto attached, leave it a matter of doubt and uncertainty as to whether the trustee in fact had in his hands any assets whatever of the

trust estate when the bond now in suit was given, and thus itself to some extent negatives the recitals in the bond, the estoppel referred to no longer applies; and consequently a surety is not estopped from denying the truth of those recitals, and may at the trial discharge himself from liability by showing that the entire estate had in fact been wasted before the execution of the bond, if in addition to this he also shows that he signed in ignorance of the real truth. *Judgment affirmed.*
August 24, 1896.

Action on bond. Before Judge Callaway. Richmond superior court. April term, 1895.

On February 1, 1883, Capers was appointed trustee of certain property for Mrs. Kirkpatrick and her daughter Mrs. McBee, and was ordered to file with the ordinary a bond for $2,000, conditioned for the faithful performance of the duties of the office; which he did. On June 15, 1889, under proceedings instituted for the purpose, a verdict and decree were rendered, directing the trustee to sell and convey all the realty of the estate, and to reinvest the proceeds in State bonds or bonds of municipalities of the State, or in such other way as the court might direct upon his application. He did sell the several lots of realty for sums aggregating $13,000, but made to the court no report except of the first sale, for $2,500, which was confirmed. After all the trust property had been sold under orders of the court, Mrs. McBee applied to the trustee for information as to the amount and investment, and on June 4, 1892, he wrote to her husband that he had given Mrs. Kirkpatrick a full history of the matter and shown her in what the estate consisted, and that she would no doubt write Mrs. McBee in full; that the beneficiaries of the trust were interested in his bond, which was solvent when he gave it, and still was, as he then owned property in value equal to the estate in his hands, but the securities should be good and they were not; that he would look around and see if he could find any one he could ask to go on the bond, who would be satisfactory, and if so he would hold on, as

Mrs. Kirkpatrick seemed to want him to do so; and that if he did not, he would resign and turn over the estate to his successor. On June 8, 1892, Mrs. Kirkpatrick wrote Mrs. McBee that Capers had brought her a full statement and asked her to tell Mrs. McBee; that the estate owed $2,500 taxes when Capers took hold of it; that after everything was paid up and the property sold, the amount left was $12,000, not all of which was yet paid, but what had been paid was invested in seven per cent. Georgia State bonds. On June 14, 1892, F. H. Miller as attorney of Mrs McBee, wrote to Capers, asking of what the trust estate consisted and how it was invested. On June 15, 1892, Capers replied that the trust estate consisted of ten seven per cent. Georgia bonds maturing in 1896, for $1,000 each, a note of C. H. Williams for $812 due July 1st, and $137 in cash; and that he would resign his trust in October, in view of the relations between Mrs. Kirkpatrick and Mr. McBee. On September 21, 1892, Miller wrote Capers, calling his attention to the statement as to his intended resignation. On September 23, 1892, Capers wrote Miller that he might have to postpone answer as to the decision in the trusteeship until his return from Columbia court. On the same day Miller wrote Capers that, in default of Capers' determination whether he would resign the trust or strengthen the bond, Miller was instructed to take action to the next term of the superior court, but would not file the petition if Capers would agree on his return to accept service and waive process. On the same day Capers wrote Miller enclosing him an acknowledgment of service on a bill to remove him as trustee, and waiving filing; stating he was sure Mrs. Kirkpatrick knew nothing of it, that she had asked him as a special favor to arrange this bond, and that he had already admitted that these people were entitled to it if they exacted it. On September 23, 1892, Mrs. Kirkpatrick wrote Mrs. McBee that Capers was going to resign, but she had asked him to keep it until January 1st, and

that he said he would waive the filing of the papers in court and that would amount to the same thing as filing. On September 26, 1892, Capers wrote Miller that he had seen Mrs. Kirkpatrick, that she expressed her regret to know that proceedings to remove him were about to be filed and that he was going to offer his resignation, etc.; that he had concluded to give up the trusteeship, but would retain it until January unless Mrs. Kirkpatrick and Mrs. McBee should sooner agree upon a suitable person to succeed him; and that in the meantime, as he had made it unnecessary by waiving filing, he would not expect the proceeding to be filed. This request of Capers was complied with by Miller, and the petition held from filing, to be presented at the January adjourned term of the court if a new bond was not given by Capers in the meantime, or he did not resign and account with his successors. Thereafter, on November 23, 1892, the bond now sued on (made by Capers as principal and Lamar and Mrs. Kirkpatrick as sureties, and payable to the ordinary and his successors) was filed by Capers in the court of ordinary, and was therein approved and ordered to record. It recites, that Capers was appointed trustee of Mary A. Kirkpatrick and children, to hold for the maintenance and use of her and children for her life, and at her death in further trust to convey to her children living at her death, or the lineal representatives thereof *per stirpes,* and in default of such children or lineal representatives, then in trust for the children of W. H. Robertson living at the time of the death of said Mrs. Kirkpatrick, or the lineal representatives thereof, four pieces of realty in Augusta, fully described and bequeathed in the manner aforesaid in the third item of the will of the late Abner P. Robertson; and whereas, under the order of the superior court of Richmond county upon petition of all parties in interest, said realty was sold and the net proceeds, $11,501.13, have been invested pursuant to said order and are held by the trustee to the same uses and trusts as

was heretofore said realty; and whereas, on account of the change of the corpus of said estate, said trustee desires to strengthen the bond heretofore filed and give this additional bond: "Now, should the said Frank W. Capers well and truly do and perform all and singular the duties required of him as trustee aforesaid, agreeably to his appointment and such as the law charges him, and also well and faithfully account of and concerning his said trust, then this obligation to be void; otherwise of full force and effect." The report filed with the ordinary by Capers, trustee, on November 23, 1892, showed receipts from the sale of the realty $13,000 as above stated, and credit of $11,100 for cash paid for ten Georgia bonds maturing in 1896 and drawing seven per cent. interest, cash on hand uninvested $369.58, and various expenses making up the balance of the $13,000.    Capers also executed a deed to Lamar, bearing even date with his signature to the bond last described, reciting that Capers was duly appointed trustee of Mrs. Kirkpatrick *et al.*, under the will of Robertson, and that owing to a change in the character of said trust estate the bond originally filed was inadequate and additional security had to be given, and Lamar and Mrs. Kirkpatrick had consented to become additional securities, and Capers desired to hold them harmless.    The deed then conveys certain realty, to have and to hold, while said parties remain such securities, in trust to apply the same to the payment of any sum or sums that they should be called on to pay by reason of said suretyship, with power of sale, etc.    This deed was recorded on January 11, 1893.

The petition in the present case alleges that the bond sued on was filed by Capers with full knowledge on his part of the pending proceedings on the part of Mrs. McBee to compel the same to be done and to avoid any further action thereunder; and for the express purpose of enabling Capers as trustee to retain in his possession the trust estate.    The acceptance of service signed by Capers trustee was returned

by Miller to Capers on January 14, 1893, stating that in
default of having some definite understanding prior there-
to, Miller expected to present in behalf of Mrs. McBee to
the superior court, when it opened on January 23, 1893,
an application to have a report made by him as trustee
showing his action under the orders authorizing the sales
of the trust estate, so that the report might appear of the
record of the instruments made thereunder. No agree-
ment was had between Miller and Capers, but no such
application was made because of the filing of a petition
on January 27, 1893, by Capers as trustee against the bene-
ficiaries of the trust, stating that he desired to be relieved
as trustee and have a successor appointed, to have an
accounting with the beneficiaries and his successor; pray-
ing for an accounting as to all property which had come
into his hands and for services rendered, and that he be
finally discharged. Annexed to this petition was a state-
ment of the trust estate in his hands, comprising $10,000
in Georgia seven per cent. bonds maturing in 1896, and
$364.58 in cash. In this cause, all parties consenting, an
order of reference was taken June 24, 1894, in which it
was ordered that on the filing of the master's report,
whether in term or vacation, the judge of the court should
appoint a successor to the trustee, and upon said appoint-
ment the present trustee, Capers, on being served with
notice thereof by either party to the cause, should without
delay turn over to said successor all the money and prop-
erty reported by the master to be or that should be legally
in Capers' possession, except enough to cover any claim
found in favor of Capers by the master, or which he might
assert by exception to the master's report. Upon the com-
ing in of the master's report, exceptions were filed by
Capers. A receiver was appointed October 15, 1894, for
the protection of the trust estate, and to place it in the cus-
tody of the court, and to make demand on petitioner for all
the trust estate in his hands. Three demands were made

by the receiver and no payment ever made to him. The case in the meantime was recommitted to the master and a second report filed, finding the amount of the trust estate to be that set forth in the bond now sued on and the accompanying return to the ordinary. To this report new exceptions were filed by Capers, and upon the same being overruled and dismissed, the master's report was approved by the court, when an order was passed appointing Barrett trustee in his place, who was authorized and directed to institute suit immediately upon the bonds filed in the court of ordinary, for the recovery of all the property and money of the trust estate not turned over to him on demand by his predecessor. Said trustee qualified under this appointment, and made demand on Capers as trustee for all the property of the trust estate in his hands, and particularly that set forth in the bond now sued on and the account filed by him November 23, 1893; but nothing of the trust estate has been paid or delivered in conformity to said demand. It is alleged that a right of action has arisen upon said bond: (*a*) From the failure to pay over and deliver to the substituted trustee any portion of the trust estate, or $11,501.13, with interest and expenses incurred by the trust estate, as recited in said bond to be in possession of the trustee. (*b*) From a failure to turn over or account to the substituted trustee for any of the bonds and money set forth in the return filed of even date with said bond. The action is brought by the ordinary for the use of Barrett, trustee, and for the use of the trust estate.

Copies of the two reports of the master, before referred to, are annexed to the petition. The first contains the following: "I find that the said F. W. Capers has or should have ten bonds of the State of Georgia for $1,000 each, and maturing in the year 1896, for which bonds it is proved he paid the sum of $11,000." This is followed by further findings of sundry amounts of cash admitted or proved to have been received by Capers and not accounted for. The

second report sets forth (among other findings) a summary of the repeated admissions by Capers of his purchase and possession of the ten State bonds referred to; and adds, that no evidence has been offered to contradict or qualify the admissions so made, except the testimony of Capers and the indirect evidence deducible from his bank account, from which it would appear (and the master in point of fact so believing) that Capers has not and never had ten bonds belonging to the trust estate in his possession;—this finding to be considered only in the event that it should be decided, contrary to the opinion of the master, that parol evidence could be admitted to contradict the terms of the strengthened bond.  If the master's opinion of the law on that point be correct, the parol testimony could not be heard; and the necessary finding would be, that the trustee invested the purchase-money of the realty in accordance with the terms of the orders of court, and had the State bonds at the time of giving the strengthened bond, and that there is no evidence that he has since sold or disposed of such bonds.

The present action was demurred to by the sureties, and the demurrer was overruled.  The material grounds of demurrer are indicated by the head-notes.

*Joseph B. & Bryan Cumming* and *M. P. Foster*, for plaintiffs in error.  *Frank H. Miller*, contra.