3588. ATKINSON, receiver, *v.* DISMUKE & BROTHER.

3609. FITZGERALD, OCILLA & BROXTON RAILROAD COMPANY *v.* DISMUKE & BROTHER.

1. There was no error in overruling the demurrers or in declining to dismiss the petition on oral motion, or in refusing to award a nonsuit. The defendant introduced no testimony. The evidence in behalf of the plaintiffs was sufficient to authorize the jury to find that the plaintiffs' personal property was destroyed by fire set out by an engine of the Fitzgerald, Ocilla & Broxton Railroad Company, and that its co-

defendant—the receiver of the railroad company from which it had leased the railroad—had elected to adopt the lease. The evidence, therefore, authorized a finding for the plaintiffs.

2. "A corporation charged with a duty to the public can not, by sale or otherwise, dispose of its property or franchises so as to relieve itself from liability acts done or omitted, without legislative sanction expressly exempting it from liability." Civil Code (1910), § 2228.

3. While "the receiver of a corporation, without the permission of the court which appointed him, can not be sued for any acts of negligence of the corporation prior to his appointment as receiver" (*Harrell* v. *Atkinson*, 9 *Ga. App.* 150, 70 S. E. 954), still, as to torts committed after his appointment as receiver, if the receiver of a lessor railroad corporation has elected to adopt an outstanding lease, by the terms of which a portion of the railroad of which he has been appointed receiver is operated by another railroad corporation, and the election is evidenced by unequivocal acts, the receiver is liable for the tortious acts of the lessee corporation, committed after his appointment as receiver and after a reasonable time has been allowed him in which to make an election, in the same manner and to the same extent as the corporation for which he is receiver would have been liable if there had been no receivership.

4. While a party who presents an appropriate request therefor is entitled to have the court give to the jury instructions applying the law of the case to the particular facts in evidence, and while a presentation of the law concretely applied to the facts directly at issue is greatly preferable to a mere statement of an abstract legal proposition, still, without charging in the terms of the request, the request may be sufficiently complied with (as in the present case) to render harmless the omission to give in charge the language of the request. In the present case the court, after stating all the material contentions of both parties, instructed the jury that the plaintiffs could not recover unless they proved every material allegation in the petition.

5. The liability of the receiver being statutory, and depending upon the proof of his relationship as lessor of the railroad company which was alleged to have set out the fire, the quantum of the liability of the receiver, if he was liable at all, would be fixed by the amount of damages (if any) found by the jury against the lessee railroad company; and the court did not err in instructing the jury to this effect.

DECIDED SEPTEMBER 27, 1912.

Action for damages; from city court of Ocilla—Judge Oxford. May 22, 1911.

F. S. Dismuke & Brother brought suit in the city court of Ocilla against the Fitzgerald, Ocilla & Broxton Railroad Company, and Atkinson and Parrott as receivers of the Atlanta, Birmingham & Atlantic Railroad Company, alleging that the Fitzgerald, Ocilla & Broxton Railroad Company, by negligence in the operation of a locomotive engine, set fire to and destroyed a stock of goods belonging to the plaintiffs, and that the receivers of the Atlanta, Birming-

ham & Atlantic Railroad Company had leased to the codefendant the line of railroad upon which the latter negligently operated the engine which destroyed the stock of goods. Parrott having died, the action proceeded against Atkinson as sole receiver. The plaintiffs' petition alleged that both of the corporations mentioned owned and operated lines of railroad in Irwin county, and that each had an office and an agent in that county. The petition alleged, that the fire which destroyed the plaintiffs' stock of merchandise, worth $15,000, was a result of the carelessness and negligence of the Fitzgerald, Ocilla & Broxton Railroad Company, in the following respects: (1) in not having its engine equipped with a spark-arrestor of the proper make and kind and in the proper state of repair, and with other appliances designed to prevent the escape of fire from the engine; (2) in that the spark-arrestor on the said engine was defective in having holes through which coals, sparks, and particles of fire were constantly thrown out while the engine was in operation; (3) in not managing, operating, and handling said engine with the proper care and diligence as it passed the building in which the plaintiffs' goods were stored. By amendment the plaintiffs alleged, that the Atlantic & Birmingham Railroad Company, on November 20, 1905, leased the line of railroad, near which the plaintiffs' store was situated, to the Ocilla & Valdosta Railroad Company, which thereafter assigned and transferred the lease in writing to the Broxton, Hazlehurst & Savannah Railroad Company, and at a later day the lease was assigned and transferred by the last-named company to the Fitzgerald, Ocilla & Broxton Railroad Company, and that on April 12, 1906, the original lessor,—the Atlantic & Birmingham Railroad Company,—sold and conveyed by deed to the Atlanta, Birmingham & Atlantic Railroad Company all of its property and franchises, including the line of railroad from Ocilla to Irwinville, Georgia, which it had previously leased as above stated. It is alleged in the original petition, and admitted in the answer, that H. M. Atkinson was duly appointed receiver of the Atlanta, Birmingham & Atlantic Railroad Company.

Atkinson, as receiver, demurred to the petition, upon the grounds, (1) that no cause of action was set forth; (2) that the allegations in the petition constitute in law no reason why the plaintiffs should have judgment against the receiver jointly with

the defendant railroad company; (3) that the facts alleged do not show that the court has jurisdiction of the subject-matter of the suit or of the receiver, nor is any right to institute action on account of the alleged damage made to appear. There were further special grounds of demurrer, complaining that the property destroyed was not sufficiently described nor its value identified, and that an invoice or bill of particulars should have been attached to the petition. The Fitzgerald, Ocilla & Broxton Railroad Company demurred specially upon the grounds that the various allegations in the petition, said to be material, were too vague and indefinite, and that certain paragraphs of the petition, specifically referred to, set forth mere conclusions of the pleader. The demurrers were overruled, and exceptions pendente lite were duly filed.

At the conclusion of the testimony for the plaintiffs, the defendants moved a nonsuit, which was refused, and exceptions to this ruling were duly preserved. In addition to the motion to nonsuit, the defendant receiver, at the conclusion of the plaintiffs' testimony, made an oral motion to dismiss the plaintiffs' petition, on the ground that it set forth no cause of action, and that the facts therein showed no reason why the plaintiffs should have judgment against the receiver. This motion the court likewise overruled, and the receiver filed exceptions pendente lite. The defendants introduced no testimony, and the trial resulted in a verdict in favor of the plaintiffs, for $4,500. In separate bills of exceptions the defendants complain of the overruling of their motions for a new trial.

With the exception of two grounds of the receiver's amended motion for a new trial, one of which complains of certain instructions to the jury, and the other of the refusal of the court to give certain instructions which were timely requested, the receiver's various assignments of error seek to raise the same questions presented by the demurrer and the motion to dismiss. The grounds of the motion for a new trial presented by the Fitzgerald, Ocilla & Broxton Railroad Company complain that the verdict was without evidence to support it, especially in view of the fact that the plaintiffs did not introduce evidence that would authorize any certain verdict, and that the verdict was excessive, and that the court erred in certain instructions to the jury and in refusing to charge as requested.

*Rosser & Brandon, McDonald & Grantham, Elkins & Wall, Boll-ing Whitfield,* for plaintiffs in error.

*L. Kennedy, H. J. Quincey,* contra.

RUSSELL, J. (After stating the foregoing facts.)   1.   We will decide the points raised in these two separate writs of error to-gether, pointing out, as we go along, those exceptions which are made in the one and not in the other.   We shall deal first with the evidence, for the reason that in both motions for a new trial it is insisted that the evidence was not sufficient to authorize the plain-tiffs to recover, and that even if the plaintiffs were entitled to recover some amount, the amount could not be definitely ascer-tained from the evidence, and that even if it be granted that a definite amount could be arrived at, the verdict was excessive.   If either of the first two of these contentions were sustained, the de-fendants would be entitled to a new trial, regardless of the other points in the case.   We will deal with the evidence first for the further reason that some of the positions most strenuously main-tained, so far as the receiver is concerned, and which were pre-sented after the conclusion of the evidence, in the motion to dismiss and in the motion to nonsuit, were also raised by demurrer at the beginning of the trial.

So far as the evidence relates to the Fitzgerald, Ocilla & Broxton Railroad Company (which we will hereafter designate the "lessee company"), it appears that it was operating a line of railroad the track of which ran within a few feet of the storehouse in which the plaintiffs' goods were stored; and the breaking out of the fire in the vicinity almost immediately after the passing of one of its engines, under circumstances which almost necessarily enforce the conclusion that the fire was caused by sparks from this engine and nothing else, in the absence of any explanation, would have authorized the jury to impose upon the lessee company liability for the resulting damage.   We bear in mind that under the ruling in the case of *Gainesville &c. Railroad Company* v. *Edmondson,* 101 *Ga.* 747 (29 S. E. 213), liability does not necessarily follow from the destruction of personal property of another by sparks emitted from a passing engine, if it be shown that the appli-ances, agencies, and instrumentalities used by the railroad com-pany were of the kind in general use and were used with due care; but in the present case the nature of the fire was such as to sup-

port the inference that the engine used by the lessee company was not equipped with such appliances as were and should be in general use, and there was no testimony on the part of the defendant, nor was there evidence introduced by the plaintiffs which would rebut this inference. We conclude that the liability of the lessee company was established by some evidence; and if it was enough to satisfy the jury, we can not, in the state of the record, say it was too little.

As to the indefiniteness of description in the testimony as to the articles described, and the lack of definite proof of their value, while more specific identification of the stock of goods, and more definite testimony as to its value, might have been produced, still we can not say that the jury would not have the right to believe the witness if he had sworn that his stock was one of general merchandise, with the fixtures usual for such stock, and that its value was $15,000. Such a general statement might tend to affect the credibility of a witness, and yet if the jury were satisfied that it was the absolute truth, the objection that the testimony was vague and indefinite would amount to nothing. It was, no doubt, for this reason, among others, that the court overruled the demurrer addressed to the same point; and we find no error in this ruling.

Having reached the conclusion that the evidence is sufficient to fix liability upon the lessee company, the liability or non-liability of the receiver of the lessor company must depend upon one of two facts,—the lease must have been made by the receiver, or it must have been adopted by him. As already ruled by this court in *Harrell* v. *Atkinson,* 9 *Ga. App.* 150 (70 S. E. 954), in accord with what we deemed to be the uniform current of authority, a receiver can not be held liable for a tort of the corporation of which he is receiver which was committed prior to his appointment as receiver, but in the present case the tort, if it was committed at all, was inflicted seventeen months after the Atlanta, Birmingham & Atlantic Railroad Company was placed in the hands of the receiver. There is no contention that the receiver made the lease, but it is undisputed, in the evidence, that the Atlanta, Birmingham & Atlantic Railroad Company bought all of the assets of the Atlantic & Birmingham Railroad Company, the original lessor, and that during the seventeen months subsequent to the appointment of the receiver he had the right to collect $559.60 each month, as

rental, from the Fitzgerald, Ocilla & Broxton Railroad Company, and that the receiver had made, so far as it appears from the record, no effort to have himself relieved from the contract of rental, or to call the attention of the United States court to the fact that he was exposed to the liability for the negligence of the lessee company imposed by the code upon any railroad company which occupies the relation of lessor. The documentary evidence sustained the allegations of the petition, that the Atlantic & Birmingham Railroad Company, prior to the sale of its property and franchise to the Atlanta, Birmingham & Atlantic Railroad Company, had leased the branch railroad, upon which the damage here involved was occasioned, to the Ocilla & Valdosta Railroad Company, which in turn, after the Atlantic & Birmingham Railroad Company had been purchased by the company now represented by the receiver, transferred that lease to the Broxton, Hazlehurst & Savannah Railroad Company, which in turn transferred it to the Fitzgerald, Ocilla & Broxton Railroad Company. Each of these transfers must be presumed to have been known to the Atlanta, Birmingham & Atlantic Railroad Company and to its receiver, because the deed of conveyance from the Atlantic & Birmingham Railroad Company to the Atlanta, Birmingham & Atlantic Railroad Company specifically refers to it, and knowledge of the assets of his cestui que trust must always be imputed to a trustee or receiver, where there is evidence of such circumstances as would put an ordinarily reasonable man on notice. Under our view of the law, the liability of the lessee company was established; and, the lease being proved, and the adoption of this lease by the receiver satisfactorily if not incontestibly established, it follows that the verdict is not without evidence to support it, and the grounds assigning various reasons why such is not the case were none of them sustained.

2. Our conclusion that the verdict is authorized by the evidence effects a disposition of the case, but in view of the fact that this conclusion is at variance with the contentions of the receiver, as insisted upon by demurrer (both general and special), by motion to dismiss, and by various assignments of error in his motion for a new trial, and as it is our duty to rule upon all of the points presented, we shall briefly state the reasons why, in our judgment, the trial court did not err in overruling the demurrer or in refusing to dismiss the petition, or in charging the jury upon

the precise point to which the exceptions relate. The contention of the receiver, that in no event can he be held liable for damage resulting from fire set out by an engine of the Fitzgerald, Ocilla & Broxton Railroad Company, rests upon two propositions: (1) that the fire was not due to the act of the receiver or the act of any of his agents or servants in carrying on the business connected with the Atlanta, Birmingham & Atlantic Railroad Company, and (2) that if he can be held liable at all, no liability can attach in the present case, because the lease was made, not by himself, as receiver, nor even by the railroad company which he is operating and whose estate he is administering under orders of the United States court, but by the predecessor in title of that corporation. To quote from the brief, "such act or transaction took place long before his appointment, and was in no sense an act or transaction of his in carrying on the business of the Atlanta, Birmingham & Atlantic Railroad Company;" and counsel rely upon the rulings in *Hollifield* v. *Wrightsville & Tennille Railroad Co.,* 99 *Ga.* 365 (27 S. E. 715), *Glover* v. *Thayer,* 101 *Ga.* 824 (29 S. E. 36), and *Harrell* v. *Atkinson,* supra, in support of his position. These cases are not on the point now before us, because in each of them there was a distinct absence of any affirmative act on the part of the receiver. In the *Harrell* case, supra, we held, that the receiver could not be held liable for a tort committed by the corporation before his appointment as receiver, and that where it appeared that the cause of action arose before the receivership, the point might be raised by general demurrer or motion to dismiss. But under the allegations in the present petition, the cause of action arose seventeen months after the receiver was appointed.

A correct decision of the vital question raised in this case must turn upon the issue as to whether the receiver of a corporation being operated under the orders of the court is subject (just as was the corporation itself prior to the receivership) to the provisions of section 2228 of the Civil Code (1910), and, in the next case, upon whether the facts set up in the petition and its amendment are sufficient to evidence an affirmative act on the part of the receiver prior to the alleged tort, whereby he voluntarily assumed liability for torts of the leasing company, imposed by law upon a railroad company which leases to another a portion of its line of railroad. We confess we have not reached a conclusion without

some difficulty, largely on account of some of the language used in the case of *Glover* v. *Thayer,* supra. It is to be borne in mind, however, that in that case the receiver was in possession of the property of a telegraph company, as an officer of the court, and it was not liability for tort which was sought to be fixed upon him, but rather the effort was made to apply a debt alleged to be due by the receiver to the telegraph company, in payment of a judgment which Thayer had obtained against the latter. In the case at bar the pleadings allege and the evidence shows that the railroad company which the receiver is operating is the owner of another railroad, which the receiver permitted to be operated, without objection, by a corporation which holds it under a contract of lease, entered into between its predecessor in title and the railroad company which sold it, subject to the lease, to the railroad corporation operated by the receiver; and if the mere fact that a railroad is being operated by a receiver will relieve a railroad corporation, which has disposed of a portion of its railroad, from the general operation of section 2228 of the Civil Code (1910), and from liability for torts committed by the lessee or leasing company, then it would only be necessary for a railroad corporation to lease its unprofitable lines to insolvent railroad companies (which might be created for the very purpose of leasing them), and thereafter, in a friendly suit, have itself placed in the hands of a receiver, with the knowledge that so long as the receivership continued, the leasing railroad company would be immune from any liability for the torts of the nominal lessee, no matter how great might be the negligence and carelessness with which the latter was operated to the jeopardy of the traveling public. "A corporation charged with a duty to the public can not, by sale or otherwise, dispose of its property or franchises so as relieve itself from liability for acts done or omitted, without legislative sanction expressly exempting it from liability." Civil Code (1910), § 2228. Under this section, if the Atlanta, Birmingham & Atlantic Railroad Company had not been placed in the hands of a receiver, it would clearly be liable for any torts shown to have been committed by the Fitzgerald, Ocilla & Broxton Railroad Company as its lessee; for, under its purchase of the railroad and franchises of the Atlantic & Birmingham Railroad Company, it became as much the owner of that portion of the railroad from Ocilla to Irwinville (which had been leased) as

of any other portion of the line which it purchased, and would have been primarily chargeable for all of the duties of such a corporation to the public, as if the road had not been leased; and as the railroad was purchased subject to the lease, the provisions of section 2228 were nevertheless applicable. As was well said by the Supreme Court in *Gregory* v. *Georgia Granite Railroad Co.,* 132 *Ga.* 590 (64 S. E. 687), "In accepting the grant of rights and franchises from the State a railroad impliedly assumes the duty of a common carrier. The consideration of the grant is the undertaking of the corporation to perform this public duty. 4 Elliott on Railroads, § 1392. A railroad can not divest itself of these public duties, nor shirk its liabilities, by simply allowing another corporation to take possession of its track and operate cars thereon. *Ga. R. Co.* v. *Haas,* 127 *Ga.* 193 (56 S. E. 313, 119 Am. St. R. 327); Civil Code, § 1864." In view of the reason for this rule, it is immaterial that there is a contract of lease. The effect upon the carrier which owned the railroad and had been granted the franchise would be the same even if the tort was the act of a mere licensee. Ruling upon the liability of the railroad company which owns the track, Chief Justice Bleckley used the following language: "There is no less skepticism in law than in theology. This court is called upon again and again for a further revelation of some legal truth which has already been revealed. After the cases of *Macon & Augusta R. R. Co.* v. *Mays,* 49 *Ga.* 355 [15 Am. Rep. 678], *Singleton* v. *Southwestern R. R. Co.,* 70 *Ga.* 464 [48 Am. Rep. 574], and *Chattanooga, Rome & Columbus R. Co.* v. *Liddell,* 85 *Ga.* 482 [11 S. E. 853, 21 Am. St. Rep. 169], it would seem that there could be no reasonable doubt of the liability of a chartered railroad company permitting another company to run trains over its railway, and thus use its franchise, to respond for any damage occasioned by negligence, whether its own or that of its lessee or licensee." *Central R. Co.* v. *Phinazee,* 93 *Ga.* 488 (21 S. E. 66). Under our statutes, a corporation which owns a railroad and the franchises may be exempted by express legislative sanction from liability, but no such statute has been passed in behalf of the company whose receiver is the plaintiff in error in the present case. There can be no reasonable doubt that, as a general rule, a receiver of a railroad company, while not suable for torts committed prior to his appointment, in

this State stands in the shoes of the corporation whose franchises he is operating, subject to all liabilities which may be created subsequently to his appointment.

3. It is insisted, however, by the learned counsel for the plaintiff in error, that, in order for liability to attach to a receiver, he must do some affirmative act. Under our construction of section 2228, the receiver in this case was liable for any negligence of the company exercising the franchises of the Atlanta, Birmingham & Atlantic Railroad Company, subsequent to his appointment, though not liable (for the reasons stated in *Harrell* v. *Atkinson,* supra) for the results of any acts of negligence prior to that time, though the corporation itself might be liable. But if we are wrong in this, and the receiver was unable to set aside or breach the contract, still it appears that for seventeen months he made no effort to obtain the intervention of the court by which he was appointed and relief from the situation in which he found himself. We think, therefore, that it could be assumed, from the allegations of the petition, and that the jury were authorized to infer from the proof, that the receiver adopted the contract entered into between the Atlantic & Birmingham Railroad Company and the lessee company. Even if we narrow the matter to this view of the case, it is well settled that where a receiver has a reasonable time in which to adopt or to rescind a contract, and does not adopt the latter course, he will be presumed to have elected to adopt the contract, and will be subject to the same liabilities as if the contract had been originally his own act. So much in response to the argument and citations of the learned counsel for the plaintiff in error. In our opinion the receiver stood in the shoes of the lessor company, and he is liable, not because of the lease (the existence of which, for reasons which we have stated, is immaterial), but because the company of which he is receiver owns the railroad over which the engine which caused the damage was operated, and because the law puts upon the lessor the burden of responsibility for the acts of the lessee. As receiver he was liable to the same extent that the Atlanta, Birmingham & Atlantic Railroad Company was liable, because, under the provisions of section 2788 of the Civil Code, "The liability of receivers, trustees, assignees, and other officers operating railroads in this State, or partially in this State, for injuries or damages to personal property, shall be the same as the

liability now fixed by law governing the operation of railroad corporations in this State for like injuries and damages." *Ball* v. *Mabry,* 91 *Ga.* 781. If any affirmance, ratification, or other act on the part of the receiver, in approval of the alleged lease, was necessary, as is contended by the plaintiff in error, we think such an affirmance can reasonably be inferred from the fact that the receiver permitted the Fitzgerald, Ocilla & Broxton Railroad Company, whose road connects with the railroad which he is operating and is a part of it, to operate its trains under his very eyes for seventeen months, without protest or objection, over tracks owned by the company of which he is receiver.

4. The fact that the judge declined to charge the jury as requested is not, in our opinion, sufficient ground for reversal, although we think the charge requested should have been given substantially in the language in which it was presented. A party is entitled to have the law applied to the particular facts in testimony, and the presentation of the law concretely applied to the points directly at issue is greatly preferable to a mere statement of the law in the abstract. This court has frequently pointed out that instructions of the former character are much more intelligible to a jury of laymen than the mere statement of an abstract legal proposition. We think, therefore, that the jury should have been told that Dismuke & Brother were not entitled to any amount, unless they had proved that the Fitzgerald, Ocilla & Broxton Railroad Company actually caused the fire by the negligent acts, or some of them, set out in their petition, and the jury should further have been told, as requested, that a railroad company is not responsible and can not be made to pay for causing a fire, unless the fire was the result of its negligent acts or omission. However, although these instructions, which apply the law directly to the evidence in the case, should have been given, still we think the request was substantially complied with when the judge instructed the jury, more than once, that the plaintiffs could not recover unless they proved every material allegation in the petition, this statement, too, being made after the judge had read to the jury the material portion of the petition and stated the material contentions of both parties.

5. It is insisted on the part of the receiver that the court erred in charging the jury as follows: "In passing upon this case, I

charge you that you should determine what your verdict is as to the Fitzgerald, Ocilla & Broxton Railroad Company, and, when you have done this, determine whether or not the allegations as to the other defendants have been established. If they have, then you will be authorized to find a verdict against them also, of course, for whatever you determine to find against the Fitzgerald, Ocilla & Broxton Railroad Company." This instruction is not subject to the objection made to it that the jury were thereby instructed that if they found the Fitzgerald, Ocilla & Broxton Railroad Company liable, then the receiver would be liable also, or that the jury were instructed that the receiver was liable without regard to the special defenses set up by him. The meaning of the charge (and we are certain the jury must have so understood it) was that in no event would the receiver be liable, unless the Fitzgerald, Ocilla & Broxton Railroad Company was found to be liable; and that if liable at all, the amount of the receiver's liability would be the same as that found against the Fitzgerald, Ocilla & Broxton Railroad Company. Moreover, in another part of his charge the judge gave a clear instruction to this effect; so that the jury could not have been misled by this instruction, which in no event conveyed the meaning stated in the assignment of error.

*Judgment affirmed. Pottle, J., not presiding.*