28010.   HOME INSURANCE COMPANY OF NEW YORK
v. PALMOUR HARDWARE COMPANY.

Decided February 23, 1940.   Rehearing denied March 18, 1940.

*MacDougald, Troutman & Arkwright, Harllee Branch Jr., W. P. Whelchel, G. Fred Kelley,* for plaintiff in error.

*Wheeler & Kenyon, Charles J. Thurmond, Joseph D. Quillian,* contra.

Sutton, J.   Palmour Hardware Company brought suit against Home Insurance Company of New York, to recover the face value of a fire-insurance policy in the amount of $2000, the petition alleging that on April 6, 1936, the property insured was destroyed by fire and was of the value of $39,000; and that due notice of loss and proof thereof were submitted to the defendant, but that it refused to pay any amount under the policy.   The policy provided, among other things, that "If a building or any part thereof fall, except as the result of fire, all insurance by this policy on such building or its contents shall immediately cease."   The defendant answered, admitting that it issued to the plaintiff the policy sued on, but denied that the property was destroyed by fire.   It admitted

that the purported proof of loss was duly submitted to it, and that it had denied liability under the policy sued on, further setting up that about 8:40 o'clock on the morning of April 6, 1936, and before the occurrence of any fire on the premises described in the policy, a tornado or violent windstorm caused a part of the building described in the policy to fall, which was before the fire which plaintiff's petition alleged had occurred, and that under the falling-building clause of the policy all insurance immediately ceased, and therefore the defendant was not liable to the plaintiff on account of any alleged loss or damage by fire after said storm damage, and that it is not liable to the plaintiff in any amount. The jury returned a verdict in favor of the plaintiff. The defendant's motion for new trial on the general grounds and on several special grounds was overruled, and the exception is to that judgment. It was contended on the trial, and is contended in the brief of counsel for the plaintiff in error, (a) that a verdict for the defendant was demanded, because the evidence showed that the building fell as a result of a tornado before the fire occurred, and therefore the insurance had ceased; and (b) that the plaintiff's evidence failed to show what damage was due to fire as distinguished from other hazards. Although the five special grounds of the motion for new trial contain separate assignments of error, it is admitted by counsel for the plaintiff in error that they are controlled by the decision on the questions above stated. Upon the trial it was stipulated between the parties that on the property insured under the policy in question there was a total amount of insurance of $26,000 in force on the morning of April 6, 1936; that the defense to the suit is that this total amount of insurance ceased by reason of the fall of the building before the fire, as claimed by defendant; and that it was an issue as to whether the property was insured after the tornado. It was conceded by the plaintiff that only $2000 could be recovered in any event in this particular suit; that if the amount of damage was less than $26,000, then, if the plaintiff was entitled to recover, it would be entitled to recover only 2/26 of whatever damage might be shown; and that if the damage by fire exceeded $26,000, the plaintiff would be entitled to recover the full amount of $2000 sued for, if entitled to recover at all. The plaintiff introduced in evidence the original proof of loss. It was further stipulated between the parties that on the morning of April 6, 1936, at

approximately 8:30 o'clock the City of Gainesville, Georgia, in which the property of the plaintiff was located, was visited by a tornado, preceded a short interval previously by strong winds of varying intensity, which in two minutes demolished or damaged hundreds of brick buildings and frame buildings, including factories, stores, public buildings, and residences in its path, scores of people being killed or wounded, and heavy damage being done generally.

Although it is contended by the plaintiff in error that a finding in favor of its special plea was demanded, and that, even if such a finding was not demanded as a matter of law, the burden rested upon the plaintiff throughout the entire trial of showing that the building did not fall before the fire, and that as the plaintiff did not carry such a burden it is not entitled to recover, we think that these contentions can not be upheld. First, was a finding in favor of the defendant's special plea demanded? The evidence showed, without dispute, that the windstorm and tornado struck the plaintiff's building and blew down the roof and upper story, causing them to collapse downward into the first floor for a distance of at least eighty feet from the front of the building toward the rear; that the walls at the front of the building were blown down, and a side wall was blown down to a height of only six or eight feet from the front of the building, and that the material portions of the building were caused to collapse. On the left side of the ground floor, and ten or fifteen feet from the south wall, a large stove, made of cast iron and steel-jacket or metal-sheet covering, was placed and used for heating purposes. The uncontradicted evidence showed that this stove contained about a bushel and a half of coal which was burning freely just before the time the building was struck by the tornado. This stove was four or five feet in height, and beneath it was a metal mat for catching any ashes from the stove. From the stove an ordinary stovepipe ran upward for about two joints, estimated from 20 to 30 gauge, and from an elbow extended to a flue in the side of the wall, being supported by a wire which passed under the pipe and was fastened to the ceiling overhead. While the janitor who made the fire testified that he properly closed the stove door, there was evidence that it sometimes got out of order and had to be readjusted, and that the door had formerly been seen to open and a blast of fire issue from

it. There was evidence from several witnesses, in and about the building, and from some who were near the stove shortly before the tornado struck the building and during its passage over the building, which would authorize, if not demand, a finding that there was no merchandise on fire, and in fact no fire on the premises out of the stove, until after a substantial part of the building had fallen, in which event the insurance under the terms of the policy would have ceased.

The defendant contends, that by this evidence it successfully carried the burden of sustaining its special plea, notwithstanding certain testimony of the janitor which the defendant asserts was inconclusive of any fact contrary to the evidence of the other witnesses; that his testimony was impeached by the physical condition of the premises and the position in which he was; and that the facts testified to by him, being circumstantial, were entirely consistent with the direct testimony of the other witnesses which, it is contended, demanded a finding in favor of the defendant on its special plea. This witness testified that just before the tornado struck the building he ran about twenty-five feet from the back of the store to warn the president of the corporation, who was then at the front of the store, stopping just short of a seven-foot opening in a partition between the wholesale and retail departments, into which the length of about 166 feet was equally divided, and from such position "saw some fire out in the front of the stove," and without further investigation fled from the building to a near-by motor inn, about 150 feet distant, upon reaching which he looked back and saw the building still standing. In an instant the tornado struck the building with the results above mentioned. On cross-examination he testified that what he saw "appeared to be coals lying on the floor." In the meantime, as shown by the evidence, a wind of great intensity was blowing through the building through open doors, front and aft, being so violent that the president of the corporation and his son were unable to close against the wind the front door of the building, and sufficient in its strength and velocity to shatter a large plate-glass window in the store front. It is contended by the defendant in error, that by this evidence a question for the jury was presented, as to whether or not the property insured was actually on fire before the fall of the building, rather than that a finding in favor of the defendant's plea was de-

manded; that the jury were authorized to find that the stove as constructed could not, under the circumstances, withstand the force of the wind blowing through the store; that the pipe was blown down and fire escaped therefrom or from the stove and set fire to the merchandise before any substantial part of the building fell; and that by these inferences and the testimony of the janitor the jury were authorized to find against the special plea and in favor of the plaintiff: It is further contended that the jury were authorized to accept the testimony of this witness against circumstantial evidence introduced by the defendant, to the effect that in his position at the rear of the store, back of the opening in the partition, he could not possibly have seen the coals or fire near the stove because of a large safe, which, as testified by one witness, necessarily obstructed his view, and because of bins which surrounded the stove.

A case similar to the present one, but without any positive testimony as to any fire or coals on the floor of the building before its collapse, was recently before this court, as reported in *Hanover Fire Ins. Co.* v. *Pruitt*, 59 *Ga. App.* 777 (2 S. E. 2d, 123). It was there ruled: (a) The condition in the policy that no liability should exist in the event the building fell before the fire was a condition subsequent. See also 8 Couch's Enc. Insurance, 1074, § 2246, and cit., following Hartford Fire Ins. Co. *v.* Doll, 23 Fed. 2d, 443 (56 A. L. R. 1059), to the same effect, and also holding that the burden of showing that the policy was avoided by a breach thereof is upon the defendant. (b) The plaintiffs made out a prima facie case when they introduced the policy sued on, which on its face was in effect, and showed a loss by fire, the amount of the loss, and proper demand and a refusal to pay. (c) As the defendant had pleaded a breach of the condition subsequent, the question for determination was, not whether the plaintiffs had shown that the fire began before the building fell, but whether the defendant had established that the building fell before the fire began, the burden being upon it to go forward with the evidence and show a breach of the condition subsequent; and that if the defendant failed to carry this burden after the plaintiffs had made out a prima facie case, the plaintiffs were entitled to recover. That ruling decides adversely to the plaintiff in error the legal questions raised by it and mentioned above.

The plaintiff in the present instance made out a prima facie case in the manner pointed out in the *Pruitt* case; and the burden of sustaining its special plea then rested on the defendant. The evidence on the question whether the building fell before the property caught fire did not demand a finding in favor of the defendant. The testimony of the janitor as to seeing coals or fire on the floor before any part of the building fell made a conflict in the evidence which the jury were required to solve. Though somewhat at variance with the physical facts of the case, and the testimony of one witness that in his opinion the janitor could not have seen the coals from the position which he occupied at the time, his credibility was for the jury, and they were authorized to find that he did in fact see the coals before the fall of the building. They were further authorized to find that these coals were, inferentially, blown about and caused to come in contact with and set fire to the merchandise in the brief interval before the building fell, or that the force of the wind so acted upon the stovepipe or the stove itself as to cause sparks or flame to be emitted therefrom and ignite the woodwork of the store and its fire to be transmitted to the merchandise before the fall of the building. It may reasonably be contended, on the other hand, that it was the falling of the building which dismembered the stove, which was found to be crushed after the tornado had passed, and that thereby its contents were spread about after the building had fallen. The solution of this difficulty was for the jury, and we can not say that their finding was not authorized, either as to the merchandise being on fire before the fall of the building, or as to the value of the damaged property being in excess of $26,000, as testified to by the vice-president of the plaintiff corporation. While this witness was not able to testify from existing records, he was, according to his testimony, thoroughly familiar with the periodical inventories of the merchandise, and from his experience able to approximate the value of the goods just before the casualty, which he estimated to amount to $40,000; and could also determine, by a method stated, the value of the goods damaged by fire as distinguished from the fall of the building. While such proof of value was not as specific and definite as might be desired, the jury, in the absence of a showing that there was better evidence available, had the right to accept the testimony as the truth. *Atkinson* v. *Dismuke*, 11 *Ga. App.* 521, 526

(75 S. E. 835). It follows from what is said, that all of the grounds of the motion for new trial are without merit, and that the court did not err in overruling the motion.

*Judgment affirmed. Stephens, P. J., and Felton, J., concur.* -